36



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                Plaintiff,

v.

**LIVEFREE EMERGENCY
RESPONSE, INC.,**
a Delaware corporation, d/b/a
**MEDICAL ALERT SYSTEMS,**

                Defendant.

Case: 2:23-cv-11303
Judge: Murphy, Stephen J.
MJ: Grand, David R.
Filed: 06-01-2023
CMP DOBRONSKI VS LIVEFREE EMERGENCY RESPONSE, INC. (DP)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against the Defendant alleges:

1. As the Supreme Court has explained: "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act

of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335, 2343 (U.S., 2020).

2. This matter arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, the Michigan Home Sales Solicitation Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

## Parties

3. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a domicile and place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

4. Defendant LIVEFREE EMERGENCY RESPONSE, INC. ("LiveFree") is a corporation organized and existing under the laws of the State of Delaware, with a principal office at 919 North Market Street, Suite 950, Wilmington, New Castle County, Delaware 19801-3036.

5. LiveFree does business under the assumed business name MEDICAL ALERT SYSTEMS as registered with the Idaho Secretary of State.

## Jurisdiction

6.  This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7.  This Court has limited personal jurisdiction over Defendant LiveFree, pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

## Venue

8.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received by Plaintiff in this judicial district.

## The Telephone Solicitation Laws

9.  In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

10.  According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are

3

thousands of complaints to the FCC every month on both telemarketing and robocalls."

11. Congress explicitly found that robo-calling is an invasion of privacy.

12. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

13. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

14. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion.

[Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

15. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

16. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

17. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice- ...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; ..."

18. Pursuant to authority delegated by Congress to the FCC under the TCPA

at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

19. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

> "(a) No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...
>
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(I) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...."

20. The TCPA implementing regulations at, 47 C.F.R. § 64.1601(e), additionally promulgate in relevant part:

> "Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

6

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

21.   The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action,

as follows:

"PRIVATE RIGHT OF ACTION.   **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

© both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than

> 3 times the amount available under subparagraph (B) of
> this paragraph." [Emphasis added.]

22.   Pursuant to Congressional mandate set forth in the Do Not Call
Implementation Act of 2003 ("DNCIA"), codified in the TCPA at 47 U.S.C. §
227(c)(1), the FCC adopted regulations establishing a national "do not call" database
and prohibiting any person from making or transmitting a telephone solicitation to the
telephone number of any subscriber included in such database, which regulations are
set forth at 47 C.F.R. § 64.1200©, and promulgate in relevant part:

> "No person or entity shall initiate any telephone
> solicitation to:...

> "(2) A residential telephone subscriber who has registered
> his or her telephone number on the national do-not-call
> registry of persons who do not wish to receive telephone
> solicitations that is maintained by the Federal
> Government...."

23.   Additionally, as to the DNCIA, the TCPA, at 47 U.S.C. § 227(c)(5),
provides for a private right of action, as follows:

> "Private right of action.  A person who has received more
> than one telephone call within any 12-month period by or
> on behalf of the same entity in **violation of the regulations**
> **prescribed under this subsection** may, if otherwise
> permitted by the laws or rules of court of a State bring in an
> appropriate court of that State—

> (A) an action based on a violation of the regulations
> prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

24.  The "do not call" proscriptions also are applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

"The rules set forth in paragraph © and (d) in this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers...."

25.  The FCC has declared that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". <u>See</u> *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

26. The Michigan Legislature also has promulgated laws protecting consumers

in Michigan from telephone solicitations. The MTCCCA, at M.C.L. § 484.125(2),

promulgates:

> "A caller shall not use a telephone line to contact a
> subscriber at the subscriber's residence, business, or
> toll-free telephone number to do either of the following:
>
> (a) Deliver a recorded message for the purpose of
> presenting commercial advertising to the subscriber, unless
> either of the following occurs:
>
> (I) The subscriber has knowingly and voluntarily
> requested, consented, permitted, or authorized the contact
> from the caller.
>
> (ii) The subscriber has knowingly and voluntarily provided
> his or her telephone number to the caller.
>
> (b) Deliver or attempt to deliver intrastate commercial
> advertising if the caller activates a feature to block the
> display of caller identification information that would
> otherwise be available to the subscriber."

27.     The MTCCCA, at M.C.L. § 484.125(5), provides a private right of

action, as follows:

> "A subscriber contacted by a caller in violation of this
> section may bring an action to recover damages of
> $1,000.00, together with reasonable attorneys' fees."

28.     Michigan has such a disdain for telemarketers that violators of the

MTCCCA may be subject to criminal prosecution. A caller who violates the

MTCCCA is guilty of a misdemeanor, punishable by a fine of $1,000.00 or

imprisonment for 10 days, or both. M.C.L. § 484.125(9).

29.  Additionally, the Michigan Legislature has enacted the MHSSA, which promulgates at M.C.L. § 445.111a, as follows:

> "(1) A home solicitation sale shall not be made by telephonic solicitation using in whole or in part a recorded message. A person shall not make a telephone solicitation that consists in whole or in part of a recorded message...
>
> (5) Notwithstanding any other provision of this section, if an agency of the federal government establishes a federal do-not-call list, within 120 days after the establishment of the federal do-not-call list, the commission shall designate the federal list as the state do-not-call list. The federal list shall remain the state do-not-call list as long as the federal list is maintained. A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal list."

30.  The MHSSA goes on further to promulgate, at M.C.L. § 445.111b, as follows:

> "(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made.
>
> (2) The person answering the telephone number required under subsection (1) shall provide a residential telephone subscriber calling the telephone number with information

describing the organization or other person on whose behalf the telephone solicitation was made to the residential telephone subscriber and describing the telephone solicitation.

(3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

31. The MHSSA, at M.C.L. § 445.111c(3), provides a private right of action, as follows:

"A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees. This subsection does not prevent the consumer from asserting his or her rights under this act if the telephone solicitation results in a home solicitation sale, or asserting any other rights or claims the consumer may have under applicable state or federal law."

32. Like the MTCCCA, the MHSSA also imposes criminal penalties upon violators. A person who knowingly or intentionally violates the MHSSA is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both. M.C.L. § 445.111c(2).

33. Not to be outdone by Michigan, the Florida Legislature also has promulgated laws restricting telephone solicitations. The FTSA, at Fla. Stat. § 501.059, promulgates in relevant part as follows:

"... (2) Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation...

(8)(a) A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

(b) It shall be unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed

on a device in or connected to the subscriber's telephone...

(10)(a) A called party who is aggrieved by a violation of this section may bring an action to:

1. Enjoin such violation.

2. Recover actual damages or $500, whichever is greater.

(b) If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a)...."

35. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

36. Plaintiff's cellular telephone number is 734-***-9671.

37. Plaintiff's residential telephone number 734-***-9671 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously

since at least December 9, 2004 and at all times subsequent thereto and relative hereto.

38. Plaintiff uses his cellular telephone primarily for personal, family and household purposes.

39. By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his cellular telephone number.

40. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

41. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

42. Plaintiff is the subscriber and a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has

standing to bring this action for alleged violations of TCPA's robocall provisions.

43. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

44. At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

45. At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) to Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

46. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the Defendant.

47. The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

48. For each and every call alleged herein initiated to Plaintiff's telephone line,

Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

49. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

50. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

51. For each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

52. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A

17

violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## Vicarious Liability

53.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by a common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

54. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

55. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

## The Scheme

56.  Defendant LiveFree is a company that manufacturers and sells medical alert devices to consumers.

57.  As part of its business practice, LiveFree engages the services of third-party telemarketers to place telemarketing calls to consumers in order to solicit them to purchase LifeFree's medical devices.

58.  The marketing strategy which LiveFree utilizes is to offer a "free" medical alert device to consumers.  But, just as there is no such thing as a free lunch, the "free" medical alert device comes with a catch – the consumer has to pay a monthly "monitoring free".

59.  In order to maximize the efficiency of its telemarketing efforts, LiveFree's third-party telemarketing agent utilizes automatic telephone dialing systems, which can initiate telephone calls to consumers *en masse*, which automatic systems can dial thousands of telephone numbers each hour, delivering a pre-recorded audio message to the consumer, and seeking basic pre-qualifying information from the called consumer, and only transfers the call to a live-agent third-party telemarketer where the consumer has met the pre-qualification criteria, all without human intervention. Calls which fail to meet the pre-qualification criteria are simply dumped.

60.  When a call is transferred the third-party telemarketer, the telemarketer

19

then verifies the pre-qualification criteria and engages the consumer in a presentation to attempt to close the sale.

61. Because the Defendant and the Defendant's agents all know that they are violating the TCPA and similar state consumer protection laws, the Defendants and Defendant's agents utilize various deceptive practices to conceal their identities, including manipulation of caller identification number information and providing false or generic business names when initiating calls.

62. Typically, the consumer learns the true identity of any party participating in the concert of action only after the consumer receives their credit card statement showing the charge for the monthly monitoring service.

63. When contacted directly with a consumer complaint, LiveFree will assert that it did not initiate the telephone call and feign that it has no knowledge of the illegal conduct engaged in by its agent.

64. In fact, LiveFree is well aware that its agent engages in TCPA-violative conduct, as LiveFree has been sued on numerous occasions as a result of the illegal conduct, but LiveFree engages in willful blindness to the conduct because of the enormous profits realized by LiveFree from the telemarketing activities.

65. LiveFree is additionally on notice of the TCPA-violative conduct from consumer complaints which have been made to the Better Business Bureau ("BBB")

and which complaints have been forwarded to LiveFree.  One such typical complaint

complaint against LiveFree, posted on BBB's web site, reads:

**Initial Complaint**
07/27/2021

**Complaint Type:** Problems with Product/Service
**Status:** Answered ●

I've been receiving unwanted robocalls to my number beginning approximately June 22,
2021. After identifying the company, the calls continued. I called the company and asked to
be removed from their lists and was told my number would be removed. Since that call, the
calls from this company continue averaging 1 per day. I've sent the company a letter with
screenshots of the calls received, however I have not received a response. My letter was
received and signed for. I sent another letter via email, and again I have not received a
response. I am on the national do not call list and don't understand why this company
continues to call after I told them not to.

66.  Over the past twelve months immediately prior to this lawsuit, Plaintiff has

received dozens of uninvited calls on his cellular and residential telephones which

begin with a recorded message from generic-sounding business names each offering

a "free medical alert pendant," including many where the recorded message identifies

with the name "Ashley from Senior Care Authority."  Until just recently, Plaintiff's

attempts at identifying the calling party have been futile.

67.  Plaintiff has had to engage in various investigative techniques to attempt

to identify the sources of the unwanted telemarketing calls which he receives. One

investigative technique utilized by Plaintiff is termed a "canary trap", wherein

Plaintiff provides false, but unique, identifying information during each received call,

in particular a unique name.  If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source of a call, is able to be made.

### Call 1

68.  On May 11, 2023, at approximately 5:19 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone 734-***-9671.

69.  The caller identification number displayed was 734-290-8628.

70.  Upon answering the telephone line by saying "hello", a recorded message began to play stating:

> "Hello. [Delay.] Hello, my name is Ashley from Senior Care Authority.  I've been trying to reach you about getting your free medical alert pendant.  And, I'm, sure that you already know that 1 out of 5 devices saves a life everyday. So, I'm really glad that I was able to reach you."

71.  In order to better identify the caller, when prompted by the recorded message, Plaintiff responded that he wanted more information.

72.  The call then transferred to what appeared to be a computerized voice response system with a male voice that began asking pre-qualification questions, and then eventually sought personal identifying questions to close the sale, including name, address, and credit card number.

73.  The recorded message stated that the hardware would be free, but that

there would be a monthly monitoring fee of $39.99 to Plaintiff's credit card.

74. Plaintiff provided the "canary trap" name of Jeremiah B. Patri, a controlled address, and a controlled credit card number. Plaintiff also stated that his wife's name was Gloria Patri.

75. The call was then transferred to a live telemarketer who identified herself as Nicole in the Verification Department.

76. Nicole then verified the information which Plaintiff had provided to the automated system and again verified that the equipment was free but that there would be a monthly monitoring fee of $39.99 to Plaintiff's credit card.

77. Plaintiff asked Nicole for the name of her business, to which she responded "Medical Alert Care".

78. Plaintiff asked Nicole for the address of her business, to which she responded Orlando, Florida but refused to provide a street name or number.

79. Nicole advised that Plaintiff's credit card had been declined by his bank and the call terminated.

80. Immediately after the call terminated, in order to make a do-not-call demand, Plaintiff dialed the caller identification number displayed (734-290-8628) and received a reorder signal.

81. Immediately after the telephone call, Plaintiff learned from his financial

institution that on May 11, 2023 at 5:39 P.M. a merchant identified as "Medical Alert Systems" of Pocatello, Idaho made three attempts to charge $199.00 to Plaintiff's credit card; each charge attempt was declined.

### Call 2

82. On May 11, 2023, at approximately 8:43 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiffs cellular telephone 734-***-9671.

83. The caller identification number displayed was 734-356-3170.

84. Upon answering the telephone, the caller asked for "Jerry" Patri and identified herself as Nicole.

85. Nicole was calling because Plaintiff's credit card had been declined earlier and read to Plaintiff the entire 16-digit credit card number.

86. Plaintiff asked Nicole to confirm her business name, to which Nicole responded "Medical Alert" then hesitated and stated "Life Beacon" then against stated "Medical Alert."

87. Plaintiff asked for Nicole's telephone number, which she refused to provide and then promptly hung up.

88. Immediately after the call terminated, in order to make a do-not-call demand, Plaintiff dialed back the caller identification number displayed (734-356-3170) and received a recorded message stating: "The number you have dialed does

24

not accept any phone calls."

### Confrontation Call

89. On May 12, 2023, Plaintiff telephoned LiveFree and spoke to a representative by the name of Jessica.

90. Plaintiff inquired why there had been multiple $199.00 charges against Plaintiff's credit card under the merchant name Medical Alert Systems.

91. Jessica informed Plaintiff that "Gloria Patri" had filled out a request online to receive information about the Medical Alert Systems products and services.

92. Given that Plaintiff had invented the names "Jeremiah B. Patri" and "Gloria Patri" at the spur of the moment during Call 1, *supra*, it is impossible for that telephone call to have been initiated in response to an online request from "Gloria Patri."

93. Plaintiff informed Jessica that Plaintiff's telephone number is on the do-not-call list.

### Call 3

94. On May 15, 2023, at approximately 4:55 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone 734-398-3739.

95. Upon answering the cal, a female asked for "Gloria Patri" and introduced herself as "Chloe... one of the managers at Medical Alert Care."

96.   Chloe wanted to verify Plaintiff's billing information and provided the "canary trap" address and full 16-digit credit card number which Plaintiff had supplied during Call 1, *supra*.

97.   Plaintiff inquired of Gloria as to where her company was located, to which she responded "Orlando, Florida... but we are nationwide."

98.   Gloria informed Plaintiff that Plaintiff's credit card had been declined by his bank.

99.   Plaintiff inquired of Gloria as to the merchant name which the credit card charge had been processed; Gloria hung up without responding.

100.  After the call terminated, Plaintiff dialed the caller identification number displayed (734-398-3739), which telephone number belongs to Smoker's Alley, a tobacco store located in Westland, Michigan.

### Call 4

101.  On May 17, 2023, at approximately 1:40 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone 734-***-9671.

102.  Upon answering the call, a live telemarketer identified as being with "Medical Alert" and asked to speak with "Gloria."

103.  Plaintiff inquired as to the business name and street address; the caller hung up.

26

104.  After the call, in order to make a "do not call" demand, Plaintiff dialed the caller identification number displayed (734-322-5008) and received a recorded message stating "all of our agents are busy at the moment, please leave a message."

105.  The identity of Defendant's third-party agent is unknown to Plaintiff, but well known to Defendant. As discovery progresses in this case and Plaintiff is able to learn the identity of Defendant's third-party telemarketer, Plaintiff will seek to amend this complaint to add the third-party telemarketer(s) as additional named defendant(s).

106.  Upon information and belief, Plaintiff anticipates learning of additional telephone solicitation calls for which Defendants or Defendants' third-party agents are responsible, including their involvement in some or all of the dozens of similar recorded message "free medical alert" calls which Plaintiff has received,  at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

## COUNT I
## VIOLATION OF THE TCPA - AUTODIALER CALL

107.  Plaintiff incorporates the allegations of paragraphs 1 through 106, *supra.*

108.  Call 1 was violation of the TCPA and its implementing regulations, specifically 47 U.S.C. § 227(b)(1)(B)(iii) and 47 C.F.R. § 64.1200(a)(3), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential line using an artificial or prerecorded voice to deliver a message without the prior express

written consent of the called party and there being no emergency.

109. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the failure to include any identifying information and the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - DO NOT CALL

110. Plaintiff incorporates the allegations of paragraphs 1 through 106, *supra*.

111. Each of Calls 1 through 4 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

112. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls.

## COUNT III
## VIOLATION OF THE TCPA - FALSE IDENTITY

113. Plaintiff incorporates the allegations of paragraphs 1 through 106, *supra*.

114. Each of Calls 1 through 4 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(3), as Defendant or Defendant's

agent entity making the call for telemarketing purposes did not provide the called party with the name of the individual caller, the true name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

115. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - FALSIFIED CALLER ID

116. Plaintiff incorporates the allegations of paragraphs 1 through 106, *supra.*

117. Each of the Call Numbers 1 through 4 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a  telephone number which would permit any individual to make a do-not-call request during regular business hours.

118. The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violations of the TCPA were willful and/or knowing.

## COUNT V
## VIOLATION OF THE MTCCCA

119. Plaintiff incorporates the allegations of paragraphs 1 through 103, *supra.*

120. Each of Calls 1 through 4 were in violation of the MTCCCA, specifically M.C.L. § 484.125(2)(a), as Defendants or Defendants' agent used a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber without the subscriber requesting or consenting to same; and/or M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

**COUNT VI**
**VIOLATION OF THE MHSSA**

121. Plaintiff incorporates the allegations of paragraphs 1 through 106, *supra*.

122. Each of Calls 1 through 4 were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendant or Defendant's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. 445.111b(1), as the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated; and/or M.C.L. 445.111b(3), as the telephone solicitor intentionally blocked or otherwise interfered with the caller identification function on the telephone of a

30

residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

## COUNT VII
## VIOLATION OF THE FTSA

123.  Plaintiff incorporates the allegations of paragraphs 1 through 106, *supra.*

124.  Each of Calls 1 through 4 were in violation of the FTSA: specifically Fla. Stat. § 501.059(2), as Defendants or Defendants' agent made an unsolicited telephonic sales call to a residential telephone number and did not identify himself by his or her true first and last names and the business immediately upon making contact by telephone with the person who is the object of the telephone solicitation; and/or Fla. Stat. § 501.059(8)(a), Defendants or Defendants' agent made and allowed a telephonic sales call to be made involving the playing of a recorded message without the prior express written consent of the called party; and/or Fla. Stat. § 501.059(b), Defendants or Defendants' agent caused a telephonic sales call to be made to fail to transmit the originating telephone number and the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call.

125.  The aforesaid violations of the FTSA were willful and/or knowing as is evidenced by the repeated number of calls and the deliberate and over actions taken

by Defendant and/or Defendant's agents.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.   Damages:

    i.   Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I | 4 |
| II | 4 |
| III | 4 |
| IV | 4 |

A total of 16 violations at $500.00 per violation, for damages of $8,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $24,000.00.

    ii.   Damages for violations of the MTCCCA alleged at Count V: 4 violations at $1,000.00 per violation, for damages of $4,000.00.

    iii.   Damages for violations of the MHSSA alleged at Count VI: 4 violations at $250.00 per violation, for damages of $1,000.00.

    iv.   Damages for violations of the FTSA alleged at Count VII: 4 violations at $500.00 per violation, for damages of $2,00.00,

which amount shall be trebled because the violations were willful and/or knowing, for total damages of $6,000.00.

The cumulative total amount of damages claimed in this action is $35,000.00,and in the event of default judgment is the sum certain damages amount that will be sought.

B.     An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.     An injunction enjoining Defendants and Defendants' agents from initiating any telephone calls to Plaintiff's residential telephone and cellular telephone lines.

D.     Interest accruing from the date of filing until paid at the statutory rate; and,

E.     Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: May 30, 2023

_____
Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MARK W. DOBRONSKI

## DEFENDANTS
LIFEFREE EMERGENCY RESPONSE, INC.

**(b)** County of Residence of First Listed Plaintiff    ORANGE, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    NEW CASTLE, DE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander   Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine   ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability   **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | **LABOR** | | ☒ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury -   ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | Medical Malpractice | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations   ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   **Other:**   ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| |   ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |   ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227
Brief description of cause:
ILLEGAL TELEMARKETING CALLS

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 35,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
May 30, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.         Is this a case that has been previously dismissed?       ☐ Yes

                                                                                                   ☐ No

     If yes, give the following information:

     Court: _____

     Case No.: _____

     Judge: _____

2.         Other than stated above, are there any pending or previously
             discontinued or dismissed companion cases in this or any other     ☐ Yes
             court, including state court? (Companion cases are matters in which     ☐ No
             it appears substantially similar evidence will be offered or the same
             or related parties are present and the cases arise out of the same
             transaction or occurrence.)

     If yes, give the following information:

     Court: _____

     Case No.: _____

     Judge: _____

Notes :

PRESS FIRMLY TO SEAL

 

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



**UNITED STATES
POSTAL S**

- Expected delivery date spec
- Domestic shipments includ
- USPS Tracking® service incl
- Limited international insurar
- When used internationally, a

*Insurance does not cover certain iten
Domestic Mail Manual at http://pe.us
** See International Mail Manual at ht

# FLAT RATE EN
ONE RATE ■ ANY WEIGHT

# TRACKED ■ IN:



PS00001000014

---

**UNITED STATES
POSTAL SERVICE.**   *Retail*

**P**   US POSTAGE PAID   Origin: 48130
05/30/23
2525100130-09

**$9.65**

## PRIORITY MAIL®

0 Lb 8.70 Oz
**RDC 22**

EXPECTED DELIVERY DAY: 05/31/23   [C052]

SHIP
TO:
231 W LAFAYETTE BLVD
FL 5TH
DETROIT MI 48226-2777

**USPS TRACKING® #**

9505 5123 0482 3150 0537 84

EP14F July 2022
OD: 12 1/2 x 9 1/2          USPS.COM/PICKUP

---

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

 

U.S. MARSHALS

RECEIVED
JUN 01 2023
CLERK'S OFFICE
DETROIT

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

The packaging is made from post-consumer waste. Please recycle.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022. All rights reserved.